Our next case of the morning is 120394, Pamela Murphy-Hylton v. Lieberman Management Services. Are you ready to proceed? Happily ready? May I please have the floor? Council. Good morning. My name is Richard Torriello. I represent Lieberman Management Services, as well as the Clyde Creek Condominium Association. Every case, including this one that appears before you, is important to the parties involved. However, it's our position that this case is not only important to the parties, but every residential property and management company in the state of Illinois because of the impact the ruling of the First District will have on the ownership of residential property. If the First District's decision is allowed to stand, it will have a severe impact and will basically take the state of Illinois, the law of Illinois, back to where it was before the passage of the Snow and Ice Removal Act. I know you've reviewed the extensive record as well as the briefs that have been submitted and are very familiar with the facts, so I don't have to rehash all of them, but I want to touch on a few background facts. Back in 2011, the plaintiff was a resident and owner of a unit at the Clyde Creek Condominium complex in Carroll Springs, Illinois, which is just outside Wheaton, Illinois. On February 18th, 2011, she was leaving her unit when she was walking on the sidewalk and slipped and fell on some ice and sustained some injuries. This accident, to put it into perspective, happened shortly after the very large snowstorm we had back in 2011, the blizzard of 2011. Prior to her accident, the evidence showed that my clients had a very comprehensive snow removal and ice removal plan in place, and in fact, the snow removal contractor actually lived at the property not far from where this accident occurred. In this case, the plaintiff has alleged that the ice formed as a result of an alleged defect in the property and also due to my client's failure to maintain the property. At the trial court level, Judge Ehrlich granted my client's motion for summary judgment and found that the immunity provided in the Illinois Snow and Ice Removal Act covered the allegations in this case, and therefore, a summary judgment was appropriate. The plaintiff timely appealed, and of course, because we are here today, the District reversed that judgment. The appellate court found that the immunity provided in the act did not apply when the plaintiff alleges that the ice formed as a result of a defect. And that is basically the main issue of this case, that the trial court identified, the appellate court identified, and I think the parties agreed, is the scope of the immunity provided by the Illinois Snow and Ice Removal Act. Even though the statute has been in effect for several decades, there's only been a handful of cases, and they're all recent, that address the scope of the immunity. The first one was Green from the 4th District. The Green court found that the immunity does not apply if there is a defect alleged. The next case would have been Ryan from the 2nd District, and the Ryan court found that the immunity does apply even if a defect is alleged. We then have this case from the 1st District, and a 5th District case, Reed, which was decided after the case before you. So there is a split between the districts, and that's likely another reason why we're here today. The parties are here to have you resolve this split, and my clients and I, as well as every property owner in the state of Illinois, are asking you to reverse the 1st District in this case and find that the immunity does apply, and that even if a property defect is alleged. I know the court is obviously very familiar with the Snow and Ice Removal Act and the reasons for its passage back in the late 70s. The act would basically pass to, as we know, encourage residential property owners to remove snow and ice from their property, and in exchange they were provided with immunity. What the appellate court has done in this case has rewritten the act and has basically made it meaningless. It has read exceptions into the statute that don't exist and aren't supported by either the language or the legislative history. You've been provided with a portion of the legislative debate for this act, and nowhere in the debate has it ever discussed, mentioned, or considered that the application of the act and the immunity would be restricted to certain types of cases or based on the source of the snow and ice, and that's what we have in this case. The only restriction contemplated by the legislature was the exclusion of Wolfram-Wong Act, which is obviously in the statute, as well as extending the act to businesses or commercial properties. It was ultimately decided not to, so the act is restricted to residential properties. If we agree with your position, Counsel, would we be indicating that in a situation where property owners who direct their downspouts toward a sidewalk and then allow a patch of ice to form wholly unrelated to snow or ice removal would be immunized? No, I believe we're dealing with, and that's one of the issues in this case, is what is the defect. It's our position that there is no defect and there's no evidence of one. It would depend on the facts of the case, and that would obviously be something that would be raised at the trial courts and then addressed by the judge to determine the extent of the defect. But to have a wholesale exclusion based on just an allegation that there's a defect that is not proper, I don't think that would be. Well, I know it's tough to talk when there's contested facts from your standpoint, so let me give you a hypothetical. Assume there's a snowstorm on January 1st and granular lawn comes out immediately and clears the snow so that the sidewalks are pristine, and it doesn't snow for the rest of the month. And on January 30th, then, a month later, one of your maintenance workers spills a bucket of water on the clean sidewalk, creating a patch of ice. Under these facts, would the act provide immunity if someone was injured after slipping on the ice patch? So the employee was simply just walking and spilled the water and just left it to do what it needed to do? Yeah. Sidewalks had already been cleared. Maintenance company had cleared them. Right. I mean, that may even get into the debate of whether the act that an employee will walk on is excluded for those reasons. But that scenario isn't really a defect. It's somebody negligent act by the employee, which potentially could take it outside the act, but I submit it's a little bit different than the situation we have here. Even if the facts would show that the downspout was directed to forming ice patches? Oh, in that situation, if the downspout was directed at the sidewalk? Yeah. Well, you're saying it's different than what we have here. I mean, and I understand you say the facts aren't going to bear out the fact with respect to the downspout, but if they do, should the defendant be immunized? It would, I guess, come to a factual question based on, you know, if the defendant knew about that downspout directing that way, if they had noticed problems with it. In fact, if it is even a defect, if that's the only place the downspout could be directed, there's a whole host of considerations that have to be looked at to determine that. Okay. Let me ask this question. You've said twice now that the cause of the defect, that there's a fact issue. If there is a fact issue, how does the trial court, how do we get to the issue of law of whether or not the Immunity Act applies? There really isn't a question of fact. It's our position that there's a lack of evidence. There is no evidence of any fact. But don't we take the motion to dismiss on the facts pled in the complaint? That's true? I mean, I think you have to look at the total of the evidence, the pleadings, the depositions, all the evidence when determining that's what the trial court did and he granted the summary judgment based on everything that was before him. So I think we have to look at everything and not just the facts pled in the complaint. My question is about the removal. This act is called the Residential Snow Removal Act. And the statute talks about how it grants immunity for any such party who removes or attempts to remove snow or ice from sidewalks. That person shall not be liable for any personal injuries caused by the snowy or icy conditions resulting from his act or omission. So is there any evidence that you've put forward here or alleged here that your client removed or attempted to remove the snow or ice that caused the accident? And that goes to one of our main arguments that the Ryan Court set up very well. It goes to act or omission. It's that phrase. And that was actually one of the arguments that the plaintiff was getting to. Under the appellate court's reasoning in this case, that's one of the acts and omissions. It's basically the way they're looking at it, but it's acts or omissions. The court in Ryan set out a very good analysis of what that phrase means. Acts refers to the actual removal or attempt at removing the snow and ice. Omissions refers to the failure of the snow and ice removal plan. Could you help me understand that? Because I really don't understand that argument. That's why I'm asking the question. It's called the Residential Snow Removal Act. It talks about the entity that is immunized is one who removes or attempts to remove snow. It doesn't talk about not trying to clear the sidewalk. That's certainly the original ideas of natural humiliation, ideas about no duty to clear the sidewalks. So here it seems that the immunity is granted when one removes or tries to remove the ice and snow and maybe does it in a negligent way. And I agree, but it also covers, as Ryan sets out, the failures of snow removal plans. My client had a snow removal plan in place with Grandelon. But see, that's what I don't understand. They weren't around. You're certainly not arguing that your contractor came in and cleaned it all, you know, was right there on the job and cleaned it all off, but there was some area that they missed and that's, in fact, where the plaintiff fell. That's not your argument, right? No, it is not. That's what I'm trying to understand. That seems to be what this statute is about. When someone tries to remove the snow and doesn't completely do it, then they're immunized. Well, I think it falls under the trying. Our client had a plan in place. And no one is arguing that Grandelon came out and left something behind. My client wasn't aware of this patch of ice until after the accident happened. So I believe it all falls under the omissions portion of Section 2, and that's where I think where the Ryan court was going, where the trial court in this case were basing their decision on, that this was an omission on my client's behalf for not removing this ice if it was there on the day of the accident. So the statute needed to have immunity for the failure to remove snow? The failure of the plan, I mean, if my client didn't have a contractor, didn't have somebody responsible for it, and just left it as it is, you know, it's a different situation. Let's look at that. Let's say your client just chose not to remove the snow. What would happen then? Would they be immune? Would they have a duty? Would they be liable? Well, it depends. I mean, under the law now, I guess it would still depend if it was a natural versus unnatural. If it was something aggravated by my client or something under control, then they could be liable. Unless it's natural. It's snow. They didn't come in and clean it up. That's an omission, maybe. I'm just not sure I understand your reading of the statute here. How you get to say the fact that they didn't clean the snow means they're immune. This omission means they're immune. I mean, like I said, it goes back to all the facts and having something in place and just a failure of the plan to follow through and to address the situation properly. I mean, every case has to be looked at, obviously, as we all know, based on the facts of them. This case shows that my client did have every effort to maintain this property. Not one single person complained about the efforts at the property or their plans. This was just an isolated incident that my client wasn't aware of until unfortunately after it happened, and it was the failure of their procedures that possibly led this to occur. It would seem the purpose of the Act is to encourage safety procedures to be taken by people without fear of liability, right? Correct, and that's what my client did, and it shows that my client not only had the contractor, they had members of the board that would inspect the property on a daily basis. This accident occurred roughly around 8 a.m. early on in the morning. There's evidence to show that at least one of the board members would walk the property every day. He would inspect it. If there were any issues, he could even walk over and knock on the snow removal contractor's door and say, hey, can you go take care of that over there, and he would immediately do it, and that's what the evidence showed, that everything was addressed in a timely fashion. Councilman, aren't you asking us, though, to find that the fact that you have a contract for snow removal is prima facie evidence? I believe, yeah, the contract is prima facie evidence of efforts to remove snow and ice. I think that is what we're asking you to find, yes. So just having a plan is enough to grant you immunity? Well, you have to have a plan, and I think you have to actually implement it and do things. You can't just, I think, hire a contractor and say, we're hiring you, but don't come out. We just need to say we have a place. I mean, you actually have to make the efforts to attempt to remove the snow and ice, and that's what was done in this case. Unfortunately, it hadn't snowed for, I believe it's 10 or 11 days, but obviously in winter, you don't need to have snow to have ice, and my client made every reasonable effort to remove any ice that was found on the property. Well, what if there's something about the underlying condition of the property that, in fact, the snow or subsequent ice might mask the visibility of that defect that you still covered? Well, I think if you have a defect and you don't do anything, you don't have a plan to remove snow and ice, that's a different situation, and yes, the immunity possibly could not apply in that situation. Isn't that what plaintiff is alleging here? Plaintiff is alleging a defect here, and they've been careful not to allege anything about snow and ice removal in order to get around the statute, and that was pointed out by the trial court as well as the appellate court. They don't specifically mention snow and ice removal. They simply allege, I believe it's 10 separate items of negligence. One of them is a building code violation, which there's no evidence of, and of the remaining nine, five of them deal with maintenance of the property, and the other four are alleged defects in the property. So their pleadings are just with regards to the defect, and that's where the First District went along with the Green Court and said since they did not allege anything about snow and ice removal, the act that takes it outside the act does not apply, whereas in Ryan, the allegation is based on both, and that's what the writing court said was that's why the immunity didn't apply. Well, that goes to Justice Kilbright's question, right? I mean, if they're only alleging negligent maintenance, you know, unrelated to snowfall and based on this downspout and allowing an ice patch to form, I mean, how is the act triggered? By allowing the plaintiff, as we raised in our briefs, I mean this very careful pleading that's been pointed out by both the trial court and the appellate court, you're basically giving plaintiff control of the application of the statute. So basically if a plaintiff's just alleged a defect when it involves a snow and ice case, they're doing it on purpose to avoid the application of the act, and that's what will happen in this state. Every plaintiff will now never allege snow and ice removal, so the act never comes into question. So that is giving the plaintiff the control of the application of the act rather than the court having control of the application of the act. But it has to be looked at in the facts of the case. Would they not have some control at trial? When the facts are sorted out, wouldn't the court have some control at trial? It could, but it depends on the state of the case a lot of the time. I mean, if this decision is allowed to stand, you know, the court may be limited in being able to apply the Snow and Ice Removal Act because the first district in this matter has basically almost eliminated its application. You know, all a plaintiff has to do is, and I've seen it since this decision, is just allege there's a defect at the property, and if the first district stands, there's no point in considering the Snow and Ice Removal Act. If I understand you correctly, you're saying that there's no duty to remove natural snow or ice accumulations, that the act is only triggered whenever there's an attempt to remove. Is that correct? Right. What is the necessity of the word omissions, then, if you don't have to remove it? How does that factor in, as Justice Tyson asked earlier? I think it goes to once you start the plan, once you start doing these activities, you have now started altering the property, so it protects you from failing those efforts. No different than, as you mentioned, if somebody shovels and leaves something there and someone still falls on it. The omissions section is there to cover you and encourage you to do things. So what's the necessity of arguing that you have a plan in place to do something? Is that an omission if the plan isn't carried out, having the snow removal people there? Yeah, the omission is that this patch of ice, unfortunately, was not discovered and addressed that day because the plan failed, basically, and, unfortunately, this ice wasn't discovered. But if it's a natural accumulation, you have no duty to remove it. Well, their argument is not a natural. Their argument is an unnatural. Okay. So I see I'm running short on time, but I've not, obviously, addressed all the arguments in my brief, but I would incorporate them and not waive any of them. Unless there are any further questions, I thank you. Thank you. Good morning, Your Honors. My name is Michael Raszak. I'm here on behalf of the plaintiff, Pat Malee, Pamela Murphy. The question before the Court is whether the Snow and Ice Removal Act covers this particular case, and it does not for two reasons. First, the statute itself refers in Section 1 to efforts to remove ice and snow, and the evidence given to the trial court in the summary judgment motion was that there was no effort made to remove any ice or snow. The efforts here stopped on February the 7th. The accident happened on February the 18th. There was nothing to trigger the effort section of the statute. And secondly, if we look at the statute in a broader scheme, the way I believe that the defendants are looking at it, what the defendants are asking this Court to do is to look at the second section, Section 2 of the Act, and point to the words, omissions, and say that we look at that in a vacuum, that any omission I make as a property owner that creates ice and snow hazards, I'm not obligated to fix, and that's simply not correct. In the first place, you can't look at the second part of the statute without looking at the first part of the statute, and the first part of the statute, Section 1, talks about efforts to remove. So if you're looking in the second section, it talks about snow or ice left by acts for omissions. And those acts for omissions are presumably referring to the efforts to remove the snow. That's up in Section 1. And I didn't just make that up. Of course, we have, in this case, a very specific legislative history where we know the legislature was looking specifically at fears of residents that if they did not shovel after a snowstorm, or, I'm sorry, if fears of residents, if they did shovel after a snowstorm, but either in some act made it worse by piling the snow up or by an omission by not getting it all, they might somehow suddenly become responsible. It was better if they waited until spring and let it melt. The legislature did not want that to happen. We know that the legislature was talking about shoveling after a snowstorm, and not about ice and snow caused by a deficiency in the property, because the legislature, when it talked about its goal, talked about the siege of snowstorms, which had created a problem. The legislature was not talking about a siege of leaking gutters or a siege of sidewalk problems. We're creating a problem. We know the only scope of their statute was getting people to shovel after a storm. The language of the statute itself and the language of the legislative history would appear, I believe, to fall for the affiliate court's decision here, as well as the decisions in Green and Reed. So you're really saying that the fact that it was ice and snow doesn't inform your theory. It's based upon a defect. Exactly. The facts adduced in the summer judgment proceeding were that this was an unnatural accumulation caused by a deficiency in the property, whether there is or isn't that stuff for the trial court to determine later on. So it wouldn't have made any difference if the accident occurred immediately after the snowstorm or when they first shoveled or whether it's a later point in time. Exactly. Once you have a condition of the property causing a dangerous condition of ice or snow, the immunity disappears. And even if I'm wrong on that, you still need an effort. Back up one. You still need an effort to remove it before the statute can kick in, and there simply was no effort. So either way, the plaintiff in this case was wrong. May I ask this, though? If your complaint frames this as a defective condition on the land and the defendant is arguing instead that the injury resulted from an omission or negligent removal of the snow, one of the arguments that the counsel is making is if you plead this condition on the land, then the issue is over and the case is over. Can you raise all of this as an affirmative defense? Raising the immunity statute as an affirmative defense? Depending on then at trial how the facts play out? I don't have an answer to that. I think there's always been a question about how do you handle an immunity as an affirmative defense? Is it a question of law? Is it a question of fact? But the point, I think the better answer to that is I cannot control the outcome of the case with my pleading. If I could, I would be wildly successful beyond my dreams. I have to prove what I plead. And so it's not really correct to say that a plaintiff can plead around a statute. A plaintiff has to plead that there was no effort to remove snow or that it was an unnatural accumulation caused by a deficiency in the property and then prove it. And we did that here, at least to the satisfaction of the trial court with respect to the deficiency. Was there any question in summary judgment as to the sufficiency of your evidence on the questions of defects and conditions of land? No, the appellate court specifically said that issue wasn't to reach the trial court, although it discussed those things based its decision solely upon the statute. So this is a real question. If it gets remanded, then the fact questions get sorted out later. That's exactly what I believe will and what I hope will occur, assuming that this court affirms. Unless the court has further questions, we simply ask for an affirmation. I amend it briefly. Thank you, counsel. Thank you. And to follow up on counsel's last point in your question, Your Honor, the trial court did not address the sufficiency of the evidence of a defective property. It's because there is no evidence of a defect. What we have is the plaintiff who said it was possible it came from a downspout 40-plus feet away, water would travel across grass, and then accumulate on the sidewalk. Her own brother said, no, it has nothing to do with the downspout. It's because the sidewalk was pitched towards the grass. And then another resident who kind of said a similar thing. It's our position that this isn't even enough evidence to show there was a defect. So it's not even a question of fact. It's a question of a lack of evidence. So that's another reason why the appellate court's decision should be reversed. Wait, wait, wait. Let's roll that back. Are you asking us to look at the sufficiency of the evidence? No, we're just raising the issue because the appellate court's decision is based on their, the allegation there's a defect as well as their belief there was a defect. So we're saying there was no defect. So the act should apply. And then counsel also raised we knew, with regards to legislative history, and during the debate you see they're talking about snowstorms amongst many other things. I think there's even mentions of some of the legislature members having to be in court and not being present at the session. There's nothing in there about them saying that this is restricted only to snow and ice removal and we're excluding defects. We're excluding cases where plaintiff alleges there's a defect. They talk about protecting property. And if this case stands, we're back to where we were before the Snow and Ice Removal Act. There's no encouragement or incentive, rather, for a property owner to clear snow and ice from the property. And as far as looking at the act itself, as I mentioned, it's not anywhere nearly as complicated as the other statutes that you're dealing with today and just about every other day. It's two sections, three sentences. You do have to look at both of them. I agree with counsel. But Section 1 speaks to the actual efforts. Section 2 is the actual remissions that we've been discussing here and is obviously a focus of our position. So my clients and I, as well as every residential property owner and manager in this state, I would guess, would ask that you reverse the appellate court and reinstate the judgment that was entered in my client's favor. We all thank you for your time and consideration, unless there's any further questions. Thank you, counsel. Case number 120394, Pamela Murphy Hilton v. Lieberman Management Services, will be taken under advisement as Agenda 18. Mr. Turriello and Mr. Ratzak, thank you for your arguments this morning. You are excused at this time.